LAWRENCE SATTELBERGER, PLAINTIFF-APPELLANT, v. ANDREW TELEP, DEFENDANT-RESPONDENT.

Argued October 5, 1953—Decided January 11, 1954.

354

*Mr. Maurice Jordan Price* argued the cause for appellant.

*Mr. Arthur J. Blake* argued the cause for respondent (*Messrs. Emory, Langan & Lamb,* attorneys; *Mr. Paul B. Thompson,* on the brief).

The opinion of the court was delivered by

HEHER, J. Plaintiff asserts the right of contribution established by the Joint Tortfeasors Contribution Law of 1952. *L.* 1952, *c.* 335, *p.* 1075; *N. J. S.* 2A:53A–1 *et seq.*

On January 14, 1953 one Ierly was given judgment in the Passaic County District Court against the plaintiff in the present action, Sattelberger, for $426.32, including costs, on a jury verdict in an action in tort for negligence. Sattelberger satisfied the judgment by payment made January 20 ensuing, and now, by this action in the same court, seeks to enforce contribution under the cited statute against the defendant Telep on the hypothesis of a joint liability.

By an amendment of the complaint entered November 19, 1952, Telep was made a party defendant to the action brought by Ierly. The City of Clifton was also named as a defendant. Telep made demand for a trial by jury; but in the course of the trial the court dismissed the action as to him on the ground, it is said, that as to him the amended complaint did not state a cause of action. There was no formal order of dismissal, and there is no stenographic transcript of the proceedings. The trial proceeded as to Sattelberger and eventuated in the judgment which forms the basis of the present action. The docket entries made in the cause reveal the dismissal of the action "as to City of Clifton and Andrew Telep," without more. The amended complaint named Telep as a party defendant in the caption, but only Sattelberger was charged with negligence; there was no averment whatever of negligence attributable to Telep, nor was any other cause of action laid to him, and the complaint was therefore fundamentally deficient as to him. On June 10, 1953 Judge Ward, who presided at the trial, by a formal order entered in the cause, directed that "the records" of the court in the cause "be amended to set forth that the dismissal of the amended complaint * * * as to defendant Andrew Telep entered on the 14th day of January, 1953, was 'without prejudice' "; and accordingly a docket entry to that effect was made June 12 ensuing.

But in the meantime, on April 29, 1953, there was a dismissal of the present contribution action against Telep "for failure to state a cause of action based upon the Joint Tortfeasors Act of 1952." The rationale of that determination, as disclosed by the stenographic transcript of the proceedings, was that since the record shows that the tort action was dismissed as to Telep, and there was judgment against Sattelberger alone, the Contribution Law has no application. It was considered that "once a party has been made a defendant to a suit and the action against that defendant has been dismissed," the Contribution Law would not apply. It was not deemed significant that the dismissal was rested upon the failure of the complaint to declare a cause of action;

it sufficed that there was an "adjudication made in the trial of the case as to Telep," even though not on the merits; the act was not designed, it was said, to give a right of action against Telep "after the action in which Telep was a defendant was dismissed," but only to cover cases where there was "a judgment against two defendants who were joint tortfeasors"—the law cannot reasonably be read as permitting a right of action against a "third party not brought into the suit in the original instance," or "to subject one to defend two suits," whether the dismissal "was with or without prejudice." And this was the case even though the plaintiff Sattelberger had petitioned for leave "to file a third party complaint * * * as against Telep under" the new Contribution Law. As to this, the clerk notified counsel that pursuant to action taken at "a Judges' conference on June 18th," he was directed to "advise that counterclaim be filed or new suit started and consolidated."

On June 22, 1953 the order made by Judge Ward directing an amendment of the record to set forth a dismissal of the complaint without prejudice was brought to the attention of the judge who dismissed the present action; but in the latter's understanding of the statute this obviously could have no bearing or relevance.

## I.

The dismissal of the complaint in the present action was predicated upon a misconception of the essential quality and meaning of the Contribution Law.

Section I of the act, *N. J. S.* 2A:53A–1, defines "joint tortfeasors" as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them," save that a master and servant or principal and agent shall be deemed "a single tortfeasor" for the purposes of the act. Section 3, *N. J. S.* 2A:53A–3, provides that where injury or damage is suffered by any person through the wrongful act, neglect or default of joint tort-

feasors, and the injured person recovers a money judgment for such injury or damage "against one or more of the joint tortfeasors, either in one action or in separate actions," and any one of the joint tortfeasors pays the judgment in whole or in part, he shall be entitled to contribution "from the other joint tortfeasor or joint tortfeasors for the excess so paid over his *pro rata* share," provided that no person shall have the right of contribution "from any person entitled to be indemnified by him in respect to the liability for which the contribution is sought." Thus, by clear and explicit terms the failure of judgment against Telep in the original proceeding establishing Sattelberger's tortious act does not, of itself, bar the right of contribution among joint tortfeasors ordained by the statute. The dismissal was not on the merits and, moreover, it was not an adversary proceeding between Sattelberger and Telep. The judgment does not operate as a bar to the charge of joint wrongdoing now laid to Telep.

It is urged that the dismissal of the principal action as to Telep is conclusive and of unimpeachable finality under *Rule* 3:41–2, now *R. R.* 4:42–2, ordaining that, unless otherwise ordered or provided for by rule, a dismissal other than for want of jurisdiction shall operate as "an adjudication upon the merits," and *Rule* 3:60–1, now *R. R.* 4:62–1, authorizing the correction by the trial court, on its own initiative or on the motion of a party, after notice, of clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission, save "during the pendency of an appeal." It is said that since the original dismissal did not have the saving clause "without prejudice," the defendant Telep properly rested "under the assumption that the action had been dismissed against him once and for all," and the subsequent alteration of the order of dismissal was ineffective as in disregard of the cited rules, and so the dismissal constitutes a bar to this action. It is suggested that the "defendant in the original suit can have no greater rights against this defendant than had the plaintiff."

■ But the particular rules of court are not to be made an instrument of injustice. Rules of court are mechanical aids to the administration of justice; they are designed to effectuate substantive rights, and to this end they are subject to relaxation where their enforcement would work "surprise or injustice." *Rule* 1:7–9, now *R. R.* 1:1–8.

■ Here, the complaint in the basic action did not charge Telep with negligence or a tortious act of any kind; there was no triable issue as to him, and he was properly dismissed as not subject to the jurisdiction ostensibly invoked by the plaintiff. There is a want of jurisdiction to render judgment unless there be a submission of a justiciable controversy to a competent tribunal in some mode sanctioned by the constitutional precept that accords to the defendant the hearing on notice inherent in due process. Pleading in civil actions is the means of raising issues for adjudication; and where, as here, there is not even the semblance of a cause of action pleaded against a particular defendant, there is no issue for determination and no basis for judgment against him, unless the parties waive formal pleading of operative facts and by consent submit an issue to the court for determination. *Grobart v. Society for Establishing Useful Manufactures*, 2 *N. J.* 136 (1949); *Baldauf v. Nathan Russell, Inc.*, 88 *N. J. L.* 303 (*E. & A.* 1915).

■ Under this principle, even a court of original general jurisdiction, criminal or civil, at law or in equity, "cannot enter a judgment which is beyond the claim asserted, or which, in its essential character, is not responsive to the cause of action on which the pleading was based." *Standard Oil Company v. State of Missouri on Inf. of Hadley*, 224 *U. S.* 270, 32 *S. Ct.* 406, 56 *L. Ed.* 760 (1912). Compare *Reynolds v. Stockton*, 104 *U. S.* 254, 11 *S. Ct.* 773, 777, 35 *L. Ed.* 464 (1891). In keeping with this requirement of procedural due process, our rules provide that a pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain "(a) a statement of the facts on which the claim is based showing that the pleader is entitled to relief; and

(b) a demand for judgment for the relief to which he deems himself entitled." *Rule* 3:8–1, now *R. R.* 4:8–1.

■ The complaint here did not invoke the judicial power of the court against Telep; there was no breach of duty laid to him, nor any prayer for judgment against him, and he was therefore not a party subject to any form of relief at the instance of the plaintiff. As to him there was no issue for trial and determination; he remained, after the dismissal, as if he had not been named as a party to the proceeding. This is not to say that the parties may not waive all questions as to the sufficiency of the pleadings, or the want of a pleading, and by acquiescence or consent, express or implied, proceed to the trial or hearing of an issue not made by the pleadings, and be concluded by the result. *Beach Really Co. v. City of Wildwood,* 105 *N. J. L.* 317 (*E. & A.* 1929). But this is not the case here.

## II.

The dismissal of the complaint in this action is sought to be justified on the more fundamental ground that the Contribution Law deprives the defendant Telep of his property without due process of law in contravention of the Fourteenth Amendment to the Federal Constitution, in that it "creates a presumption that the judgment" "is a correct finding of damages, based upon which a tortfeasor may bring an action against a joint tortfeasor," and there is no provision "for re-proof of damages and where," as here, "the alleged joint tortfeasor is not a party to the original suit, he is estopped from presenting evidence against the original plaintiff and is deprived of his property without due process of law."

More specifically, it is said that the statute does not require notice to "a possible joint tortfeasor of the original claim," and in the defendant's action against the alleged tortfeasor on an adverse judgment, there is no requirement of "proof of any damages beyond the amount of money paid by the original tortfeasor," nor of "any proof of negligence against" the alleged joint tortfeasor, and so he would be

made answerable for the judgment without the notice and opportunity to be heard that are fundamental in due process. The statute is denounced as "creating a presumption that is arbitrary" and denying "a fair opportunity to repel it," held in *Manley v. Georgia*, 279 *U. S.* 1, 49 *S. Ct.* 215, 73 *L. Ed.* 575 (1929) to be violative of due process. And these cases are also cited: *Bailey v. Alabama*, 219 *U. S.* 219, 31 *S. Ct.* 145, 55 *L. Ed.* 191 (1915), holding, it is said, that a law which practically shuts out the evidence of a party denies him the opportunity for a trial; *Coe v. Armour Fertilizer Works*, 237 *U. S.* 413, 35 *S. Ct.* 625, 59 *L. Ed.* 1027 (1915), holding that the rendition of a judgment against the defendant, without his consent, "upon a matter that was not within the pleadings and was not in fact litigated," is contrary to "fundamental principles of justice"; and *Postal Telegraph Cable Co. v. City of Newport*, 247 *U. S.* 464, 38 *S. Ct.* 566, 62 *L. Ed.* 1215 (1918), holding that "as a State may not, consistently with the Fourteenth Amendment, enforce a judgment against a party named in the proceedings without a hearing or an opportunity to be heard, * * * so it cannot, without disregarding the requirement of due process, give a conclusive effect to a prior judgment against one who is neither a party nor in privity with a party therein."

There is in this a fundamental misapprehension of the legislative intent and purpose.

██ The New Jersey law establishes and renders enforceable the right of contribution between wrongdoers. There is no specific provision of enforcement procedure; but the statute is not for that reason at war with due process. The practice and procedure laid down in the rules of court for the enforcement of substantive legal and equitable rights in courts of general jurisdiction provide the mechanism for the judicial vindication of this statutory right of contribution; and thereby procedural due process is accorded the person from whom contribution as a joint tortfeasor is sought.

██ The statute affirms the "existence" of contribution among joint tortfeasors; it declares the right of contribution

among two or more persons "jointly or severally liable in tort for the same injury to person or property," regardless of whether judgment has been recovered against "all or some of them"; but this right of contribution accrues only in favor of a joint tortfeasor who has paid, "in whole or in part," a judgment recovered against him for damages ensuing from the joint tortious conduct, "for the excess so paid over his *pro rata* share." A right inchoate the moment the joint wrong gives rise to the common liability becomes consummate and enforceable by action when a joint tortfeasor renders payment beyond his *pro rata* share on a judgment recovered against him for the common delict.

Thus, the statutory obligation of contribution is not confined to the judgment defendants in the principal proceeding. By explicit terms it is extended to all participants in the joint wrongdoing, whether there has been judgment against all or some of them; and it is fundamental in the statutory scheme that a joint tortfeasor not impleaded in the principal action, and so not a party to the basic judgment shall not be liable to contribution under the statute until his liability in tort has been established by judgment in a proceeding comporting with the immutable principles of individual right and justice that are comprehended in the term "due process," including the constitutional right of trial by jury, as if he were a party defendant to the action in which judgment was had against the contribution claimant. It is fundamental that as to the asserted prerequisite liability in tort, the contribution proceeding is to be treated as if it were an action for damages by the injured party against the defendant from whom contribution is claimed. The defendant in contribution is not concluded by the judgment in the principal action to which he was not a party.

At common law there is no right of contribution between joint tortfeasors who are *in pari delicto*; and this rule of the common law prevailed in New Jersey until the enactment of the statute under review. The common law distinguishes in this regard between a recovery in tort and

a joint judgment against several defendants in an action of *assumpsit. Merryweather v. Nixan*, 8 *T. R.* 186, 101 *Eng. Repr.* 1337 (1789); *Newman v. Fowler*, 37 *N. J. L.* 89 (*Sup. Ct.* 1874); *Public Service Railway Co. v. Matteucci*, 105 *N. J. L.* 114 (*E. & A.* 1928); *Manowitz v. Kanov*, 107 *N. J. L.* 523 (*E. & A.* 1931). Under the statute, contribution is enforceable only against a joint tortfeasor as therein defined; and so, by the very nature of the right and the correlative obligation, it is incumbent on the contribution claimant in a case such as this to establish a common liability for the wrongful act, neglect or default made the basis of the judgment and the quantum of the damages ensuing from the joint offense. The plaintiff must prove that he and the defendant in contribution are *in aequali jure*; he cannot prevail unless the injured person also had a cause of action for the tortious injury against the defendant called on for contribution. The judgment in tort cannot serve as more than *prima facie* evidence of the fulfillment of the condition prerequisite to the statutory action for contribution. The onus of proof of the common burden is on the plaintiff demanding the sharing of the burden. *Vide Verhelst Construction Co. v. Galles*, 204 *Wis.* 96, 235 *N. W.* 556 (*Sup. Ct.* 1931); *Western Casualty & Surety Co. v. Milwaukee General Construction Co.*, 213 *Wis.* 302, 251 *N. W.* 491 (*Sup. Ct.* 1933); *Consolidated Coach Corporation v. Burge*, 245 *Ky.* 631, 54 *S. W. 2d* 16 (*Ct. App.* 1932), 85 *A. L. R.* 1086. Said Brandeis, J., of the general principle:

"The right to sue for contribution does not depend upon a prior determination that the defendants are liable. Whether they are liable is the matter to be decided in the suit. To recover a plaintiff must prove both that there was a common burden of debt and that he has, as between himself and the defendants, paid more than his fair share of the common obligation. Every defendant may, of course, set up any defense personal to him." *Phillips-Jones Corporation v. Parmley*, 302 *U. S.* 233, 58 *S. Ct.* 197, 82 *L. Ed.* 221 (1937).

Contribution has its roots in the equitable principle of equality among those *in aequali jure*, a sharing of the common responsibility according to equity and natural

justice; and it is pertinent to suggest that under the fusion of law and equity effected by the Judicial Article of the Constitution of 1947, the old rule still obtains that where equity has rightfully assumed jurisdiction over a cause for any purpose, it may ordinarily retain the cause for all purposes, and proceed to a final determination of the entire controversy and establish purely legal rights and grant legal remedies. *Steiner v. Stein*, 2 *N. J.* 367 (1949). *Vide Mantell v. International Plastic Harmonica Corporation*, 141 *N. J. Eq.* 379 (*E. & A.* 1947).

 Thus, the New Jersey statute does not work an arbitrary enforcement of the established right of contribution, in disregard of the fundamentals of due process.

The draft act for uniform contribution among tortfeasors approved by the Commissioners on Uniform State Laws in 1939 makes provision for third-party practice. A defendant seeking contribution in a tort action may move *ex parte* or, after answering, on notice to the plaintiff, for leave as a third-party plaintiff "to serve a summons and complaint upon a person not a party to the action who is or may be liable as a joint tortfeasor to him or to the plaintiff for all or part of the plaintiff's claim against him"; and if the motion be granted and the summons and complaint are served, the third-party defendant shall make his defense to the complaint of the plaintiff and to the third-party complaint in the same manner as defenses are made by an original defendant to an original complaint, and the third-party defendant "may assert any defenses which the third-party plaintiff has to the plaintiff's claim." The plaintiff is obliged to amend his pleadings to assert against the third-party defendant "any claim which the plaintiff might have asserted against the third-party defendant had he been joined originally as a defendant"; and the third-party defendant "is bound by the adjudication of the third-party plaintiff's liability to the plaintiff as well as of his own liability to the plaintiff and the third-party plaintiff." A third-party defendant may proceed against any person not a party to the action "who is or may be liable as a joint

tortfeasor to him or to the third-party plaintiff for all or part of the claim made in the action against the third-party defendant." And there are other provisions to the same end which need not be delineated here. It suffices to say that there may be judgment for contribution "where in a single action a judgment has been entered against joint tortfeasors one of whom has discharged the judgment by payment or has paid more than his *pro rata* share thereof," and if relief can thus be had "no independent action shall be maintained to enforce the claim for contribution." 9 *U. L. A.* 156, 163, *section 7.*

The Commissioners' Note to this section reveals that the third-party practice was an optional submission, since the various states in which legislatures "were considering the enactment of the substantive provisions of the proposed act, might already have available statutes or rules of procedure under which might be effected an adequate contribution practice within the injured person's action for damages," *e. g.* Wisconsin and Pennsylvania. The third-party practice was offered for the benefit of jurisdictions without procedural facilities. The proposed provisions are modeled after Rules 14 and 13 (*g*) of the new *Federal Rules of Civil Procedure,* 28 *U. S. C. A.*, with suitable adaptations to the substantive provisions of the act and additional provisions deemed essential to a sound contribution practice under the act. *Vide* 3 *Moore's Federal Practice, sections* 14.01, 13.34 *et seq.*

The proposed third-party practice is purely procedural, in no wise affecting the substantive law of contribution, designed to obviate the need for a separate action for contribution. The provision relating to the accrual of the cause of action for contribution is not involved; the aim is, the Commissioners say, the litigation, in advance, of the issues upon which the claim for contribution will ultimately depend.

These provisions for the impleader of joint tortfeasors were omitted from the New Jersey law, no doubt in deference to the principle of *Winberry v. Salisbury,* 5 *N. J.* 240 (1950). Since third-party practice is procedural and

not substantive in nature, it is within the rule-making function vested in the Supreme Court by the Judicial Article of the 1947 Constitution.

Our rules of court provide adequate third-party procedure, embodying as they do the essence of the federal rules, although not altogether so imperative in its terms as the particular submission by the Commissioners on Uniform State Laws. A defendant, as a third-party plaintiff, may bring in one not a party to the action "who is or may be liable to him for all or part of the plaintiff's claim against him"; and the third-party defendant is enjoined to defend. The third-party defendant "may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim" and "any claim * * * arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff"; and the plaintiff "may assert any claim against the third-party defendant arising out of" the occurrence constituting the subject matter of the plaintiff's claim against the third-party plaintiff, and the third-party defendant is obliged to assert his defenses to such claim and his counterclaims and cross-claims. A third-party defendant may proceed against a person not a party to the action who is or may be liable to him "for all or part of the claim made in the action" against him; and when a counterclaim is asserted against a plaintiff, he may bring in a third party under circumstances entitling a defendant so to do. *R. R.* 4:14–1, 2, formerly *Rule* 3:14–1, 2.

This procedure is in the main adequate for the impleader of a joint wrongdoer liable to contribution under the statute. Where, as here, the right of contribution has a statutory basis, the general third-party practice ordained by the rules provides the means of its enforcement in the primary action for the recovery of the damages ensuing from the joint tort. There can be no doubt that where the right of contribution exists among joint tortfeasors regardless of whether the injured plaintiff has sued all in the first instance, the defendant may bring in other joint tortfeasors for the purpose

of enforcing contribution. Compare *Fox v. Western New York Motor Lines*, 257 N. Y. 305, 178 N. E. 289 (*Ct. App.* 1931), 78 *A. L. R.* 578, where third-party practice not unlike ours was held inapplicable in view of the limitation of the statutory right of contribution to the judgment defendants. There was no liability to contribution until judgment, and then only as to the judgment debtors, and the third-party practice was not invocable since by its terms the party brought in must then be liable to the defendant in the action. Where the common-law rule denying contribution between joint tortfeasors prevails, a defendant in an action in tort for negligence does not for that very reason have the right to bring in as a co-defendant a joint tortfeasor not made a party by the plaintiff, unless there be some other ground for a recovery against the third party. *Vide Booth v. Manchester Street R. Co.*, 73 N. H. 527, 63 A. 577 (*Sup. Ct.* 1906).

Here, as said, the common tortious conduct gives rise to an immediate inchoate right of contribution which accrues as an enforceable cause of action the moment payment is made by one of the tortfeasors of a judgment for the ensuing injury recovered against him, and contribution may be had from joint wrongdoers not parties to the judgment. This significant difference between the New York statute considered in the case cited *supra* and ours determines the application of the third-party practice. The fact that contribution depends upon judgment and payment by the original defendant is not a bar to impleader; the impleader judgment may be so fashioned as to condition enforcement of contribution on the payment made a prerequisite by the statute. Compare *Wait v. Pierce*, 191 *Wis.* 202, 209 N. W. 475, 210 N. W. 822 (*Sup. Ct.* 1926), 48 *A. L. R.* 276. See, also, 3 *Moore's Federal Practice, section* 14.11.

Under our law, the failure of the defendant in the principal action to invoke the third-party procedure does not defeat the statutory right of contribution. Impleader may be had for the protection of the right of contribution, but it is not under the statute a *sine qua non* to the enforce-

ment of contribution against the non-party tortfeasor. The design of the third-party practice in a case such as this is the adjudication in one action of all issues and controversies germane to the asserted actionable wrong, and thus to avoid the circuity of action and multiplicity of suits that retard and ofttimes defeat essential justice. The case is well within our existing third-party practice. *Vide Wait v. Pierce*, cited *supra*. But use of that procedure is not of the essence of the right of contribution; and, if it is not brought into play, the liability of the non-party joint tortfeasor remains to be established by a course of procedure satisfying the demands of due process, including the constitutional right of trial by jury unless in the special circumstances there be substantial grounds in equity for drawing the whole cause to chancery. If by such course the defendant in the tort action sustains disadvantage, he alone is to blame; but he does not suffer the loss of his essential right to contribution under the statute.

The judgment is reversed; and the cause is remanded for further proceedings conformably to these principles.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.