771 A.2d 683 (2001)
339 N.J. Super. 296
Stephanie BURT, Administratrix of the Estate of Mildred Pollak, Plaintiff-Respondent,
v.
WEST JERSEY HEALTH SYSTEMS, and/or Betty Shaw, R.N., and/or Donna Woodhull, R.N., Defendants-Appellants, and
South Jersey Anesthesia Associates, Tomas Manalo, M.D. and Dorothy Petracci, C.R.N.A., Defendants-Respondents, and
Dolores Van Steenacker, R.N. and/or Madelyn Canava, R.N., and/or Marcella Bland, R.N., Defendants.
Superior Court of New Jersey, Appellate Division.
Argued March 14, 2001.
Decided April 20, 2001.
*686 Thomas M. Walsh, Marlton, argued the cause for appellants, (Parker, McCay & Criscuolo, attorneys; Stacy L. Moore, Jr., on the brief).
Jamie M. Kaigh argued the cause for respondent Stephanie Burt, (Hockfield, Hasner & Kaigh, attorneys; Barry J. Hockfield, on the brief).
Sharon K. Galpern, Mount Laurel, argued the cause for respondents West Jersey Health Systems, Betty Shaw and Donna Woodhull, (Stahl & DeLaurentis, attorneys; Ms. Galpern, on the brief).
Before Judges KEEFE, STEINBERG and WEISSBARD. *684
*685 The opinion of the court was delivered by STEINBERG, J.A.D.
Defendants West Jersey Health Systems, Donna Woodhull, R.N., and Betty Shaw, R.N. (the Hospital defendants) appeal from an order barring them from referring to South Jersey Anesthesia Associates, Dorothy Petracci, C.R.N.A., and Tomas Manalo, M.D. (the Anesthesiology defendants) as former defendants, and from an order barring them from offering testimony at trial regarding any negligence of the Anesthesiology defendants. We reverse each order.
The procedural history of this case is complex and convoluted. In fact, this is the second time we have granted leave to appeal interlocutory orders. In the prior appeal, we affirmed an order denying the Hospital defendants' motion to dismiss the complaint for failure to supply an affidavit of merit. However, we also reversed an order denying the Anesthesiology defendants' motion to dismiss the complaint against them for failure to supply an affidavit of merit. The result of that prior appeal was that all claims were dismissed against the Anesthesiology defendants, and the case was permitted to proceed against the Hospital defendants.
For the purposes of this opinion, we will set forth only those facts necessary for resolution of the limited issues impacted by this interlocutory appeal. On December 26, 1995, plaintiff Stephanie Burt's decedent, Mildred Pollak, underwent right total knee replacement surgery at West Jersey Health Systems. After the surgery, Pollak was administered a drug, Buprvacine, by order of the Anesthesiology defendants, specifically Dr. Tomas Manalo. According to the epidural analgesia order form, if Pollak's SBP[1] fell below ninety, the epidural pump was to be disconnected and Anesthesia Pain Service was to be called. Pollak's blood pressure fell below that rate. That evening Woodhull twice noted that Pollak's systolic blood pressure had fallen below ninety. However, the Buprvacine was not discontinued. Woodhull's notes set forth on Pollak's chart indicated that she notified "Anesthesia" of the drop in blood pressure at 10:30 p.m.
According to Woodhull, she had been instructed that she had no authority to disconnect the epidural pump. Shaw also took blood pressure readings of Pollak, once obtaining a reading of eighty, but she did not disconnect the pump or again call Anesthesia. Thereafter, Pollak sustained a spinal infarction which resulted in paraplegia.
Petracci did not recall receiving a phone call from the hospital nurses. However, she acknowledged that as part of her duties she was required to make rounds, and adjust the pump up or down, as required. Essentially, the Hospital defendants *687 claim it was their responsibility to monitor the patient, and advise the Anesthesiology defendants if the patient's blood pressure fell below ninety. The Hospital defendants claim that they notified Anesthesiology upon determining that the patient's blood pressure had fallen below ninety. On the other hand, the Anesthesiology defendant claimed to have no recollection of receiving a call from the Hospital defendants regarding Pollak.
In their answer to plaintiff's amended complaint, the Hospital defendants filed a cross-claim seeking indemnity from the Anesthesiology defendants, or, alternatively, for contribution, or "settlement credit."
Prior to trial, as a result of our prior opinion which effectively mandated dismissal against the Anesthesiology defendants, on an Affidavit of Merit issue, plaintiffs moved to bar the Hospital defendants from seeking to assert any negligence of the Anesthesiology defendants, or even referring to the Anesthesiology defendants as "former defendants." The motion judge granted both applications, resulting in this interlocutory appeal, in which the Hospital defendants contend that the motion judge has incorrectly deprived them of their statutory rights to contribution and indemnification, as well as "their right to allocation of negligence and damages by the jury."
This case presents questions of first impression requiring us to consider the interplay between the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 to -5.4, the Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-1 to -5, and the Affidavit of Merit Act, N.J.S.A. 2A:53A-27 to -29. The purpose of the Joint Tortfeasors Contribution Law is "to promote fair sharing of the burden of judgment by joint tortfeasors and to prevent a plaintiff from arbitrarily selecting his or her victim." Holloway v. State, 125 N.J. 386, 401, 593 A.2d 716 (1991) (citations omitted). Contribution is designed to reflect a sharing of "common responsibility according to equity and natural justice." Sattelberger v. Telep., 14 N.J. 353, 367-68, 102 A.2d 577 (1954). The Joint Tortfeasors Contribution Law is intended to promote those purposes. Arcell v. Ashland Chemical Co., Inc., 152 N.J.Super. 471, 485, 378 A.2d 53 (Law Div.1977). The Comparative Negligence Act has the same purpose. Ibid. The Joint Tortfeasors Contribution Law is also designed to "alleviate the evident harshness and inequity of the common-law rule ... pursuant to which there was no right of joint tortfeasors to seek allocation among themselves of the burden of their fault." Markey v. Skog, 129 N.J.Super. 192, 199, 322 A.2d 513 (Law Div.1974). Thus, the Legislature enacted the Joint Tortfeasors Contribution Law to comport with "basic equitable notations that those whose fault caused the injury should, in good conscience, bear their just shares of the burden." Dunn v. Praiss, 139 N.J. 564, 575, 656 A.2d 413 (1995) (citations omitted).
The Affidavit of Merit Act requires a plaintiff, in malpractice actions filed against certain specifically designated licensed professionals, to file an affidavit of merit within sixty days following the filing of an answer to the complaint by the defendant. N.J.S.A. 2A:53-A-27. The plaintiff's failure to provide an affidavit of merit is tantamount to a failure to state a cause of action. N.J.S.A. 2A:53-29. The Affidavit of Merit Act was part of "a package of five tort reform bills intended to `bring common sense and equity to the State's civil litigation system.'" Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 228, 708 A.2d 401 (1998) (citing Office of the Governor, News Release 1 (June 29, 1995)). Absent extraordinary circumstances, a failure to comply with the statute *688 requires the complaint to be dismissed, with prejudice. Id. at 247, 708 A.2d 401.
In construing statutes relating to the same subject matter, we must strive to harmonize them. In the Matter of J.W.D., 149 N.J. 108, 115, 693 A.2d 92 (1997). Thus, "[s]tatutes in pari materia, are to be construed together when helpful in resolving doubts or uncertainties and the ascertainment of legislative intent." Ibid. (citations omitted).
With these principles of law in mind, we conclude that the judge erred in precluding the Hospital defendants from seeking to assert the negligence of the Anesthesiology defendants. That determination denied the Hospital defendants the opportunity, through no fault of their own, to proceed on their cross-claim and seek to shift some of the blame for plaintiff's injuries to the Anesthesiology defendants simply because plaintiff failed to perfect her claim against the Anesthesiology defendants. That result is inconsistent with the Joint Tortfeasor Contribution Law and the Comparative Negligence Act.
When read together, the purposes of those statutes are to ameliorate the harshness of the common-law contributory negligence bar to recovery, and permit a plaintiff to recover even though he or she may be negligent to some degree, yet, at the same time, provide that ordinarily each tortfeasor will respond in damages according to its own adjudicated percentage of fault. Accordingly, we reverse and remand and direct that at trial the Hospital defendants shall be permitted to assert the alleged negligence of the Anesthesiology defendants, provided they have competent evidence to support that contention. To hold otherwise would deny them the right to pursue their statutory right to contribution. A contrary holding would also deny them the protection afforded under the Comparative Negligence Act, which ordinarily would limit their contribution to plaintiff's damages to the percentage of negligence allocated to them by the jury.
We reject any notion that the Hospital defendants are precluded from asserting the negligence of the Anesthesiology defendants by virtue of their failure to comply with the Affidavit of Merit Act. Simply put, that statute, by its very terms, applies to plaintiffs, not cross-claimants.[2] We decline to extend the Affidavit of Merit Act and require cross-claimants to file an Affidavit of Merit in order to assert a cross-claim.
Indeed, in a related context, we have held that a plaintiff's failure to comply with the Tort Claims Act, N.J.S.A. 59:8-1 to -11, by failing to timely file the requisite notice of claim thereby barring her claims against public entities, did not preclude other defendants from asserting a third-party action against those public entities for common law and contractual indemnification. S.P. v. Collier High School, 319 N.J.Super. 452, 470-76, 725 A.2d 1142 (App.Div.1999). See also Markey v. Skog, supra, 129 N.J.Super. at 196, 322 A.2d 513 (holding that the right of a non-public defendant to seek contribution from a public entity as a joint tortfeasor is not dependent upon plaintiffs having complied with the notice requirements of the Tort Claims Acts.)
We next consider the effect of our determination upon the trial which remains to be conducted. Plaintiff contends that the negligence of the Anesthesiology defendants should not be submitted to *689 the jury in light of the fact that her complaint has been dismissed against them. Alternatively, she contends that if the negligence of the Anesthesiology defendants is submitted to the jury, she should still be entitled to recover all of the damages awarded to her from the Hospital defendants, if any, deducted by the percentage of negligence attributable to her, if any. At that point, she further contends that the dispute becomes one between the Hospital defendants and the Anesthesiology defendants whether the Hospital defendants are entitled to monetary contribution from the Anesthesiology defendants. The Hospital defendants, on the other hand, contend that the negligence of the Anesthesiology defendants should be submitted to the jury, and plaintiff's recovery, if any, should be reduced by that percentage of negligence attributable to the plaintiff, if any, as well as that percentage of negligence attributable to the Anesthesiology defendants, if any. Alternatively, the Hospital defendants contend that if plaintiff is entitled to full recovery from them, they should be entitled to pursue their claim for monetary contribution against the Anesthesiology defendants. The Anesthesiology defendants contend that since plaintiff's claims against them are barred for failure to serve an Affidavit of Merit, the Hospital defendants "derivative claims" for contribution are also barred.
As previously noted, the purpose of the Joint Tortfeasors Contribution Law is to afford relief from the harsh consequences of the common-law and afford a tortfeasor the right to seek contribution from another tortfeasor whose negligence may have contributed to the damages suffered by an injured party. On the other hand, the effect and purpose of the doctrine of comparative negligence is to impose upon each tortfeasor the obligation to pay damages in accordance with the percentage of fault attributed to it by the fact-finder. Young v. Latta, 123 N.J. 584, 592, 589 A.2d 1020 (1991); Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 569-70, 410 A.2d 674 (1980); Johnson v. American Homestead Mortg. Corp., 306 N.J.Super. 429, 436, 703 A.2d 984 (App.Div.1997); Rogers v. Spady, 147 N.J.Super. 274, 277, 371 A.2d 285 (App.Div.1977). Here, the ultimate question for our resolution is the effect of plaintiff's failure to comply with the Affidavit of Merit Act upon the Hospital defendants' right to contribution, or, more appropriately, the Hospital defendants' right to the benefit of the Comparative Negligence Act, namely that they only be required to respond in damages in accordance with the percentage of negligence allocated to them by the fact-finder. We hold that if the jury finds the Hospital defendants and the Anesthesiology defendants negligent, plaintiff's recovery must be diminished by the percentage of negligence allocated to the Anesthesiology defendants. The effect of this conclusion accommodates the Affidavit of Merit Act, the Comparative Negligence Act, and the Joint Tortfeasors Contribution Law. Obviously, in the unlikely event plaintiff is found negligent, her recovery would also be diminished by the percentage of negligence attributable to her.
In effect, this result is the same as in a case involving a settlement with one tortfeasor. Young v. Latta, supra, 123 N.J. at 584, 589 A.2d 1020; Cartel Capital Corp., supra, 81 N.J. at 569, 410 A.2d 674 (holding that when one defendant settles, the remaining tortfeasor or tortfeasors are chargeable with the total verdict less the percentage of negligence attributable to the settling defendant); Rogers v. Spady, supra, 147 N.J.Super. at 277, 371 A.2d 285 (holding that when a plaintiff settles with a tortfeasor, the percentage of negligence found attributable to the settling tortfeasor is deducted from the verdict returned *690 against the other tortfeasors found liable so that the remaining joint tortfeasors will be liable for that percentage of negligence only attributable to them). To hold otherwise would mean that plaintiff's failure to comply with the Affidavit of Merit against the Anesthesiology defendants deprived the Hospital defendants, through no fault of their own, of the opportunity to shift some, if not all, of the blame for plaintiff's injuries to the Anesthesiology defendants. In our view, allowing plaintiff's non-compliance with the act to deprive the Hospital defendants of their right to contribution and their right to respond in damages only to the extent they are found negligent, strikes at the very heart of both laws and cannot be allowed.
Although not briefed by the parties, we raised at oral argument the impact of N.J.S.A. 2A:15-5.3(a), which allows a plaintiff to recover the full amount of damages from any party determined by the trier of fact to be sixty percent or more responsible for the total damages. Since the parties were permitted to address the issue at oral argument, we elect to address it in this opinion for the sake of completeness and for guidance of the parties at trial. We conclude that a plaintiff who fails to file an Affidavit of Merit against a licensed professional is not entitled to recover the full amount of damages from a remaining licensed professional who is deemed to be sixty percent or more responsible for the total damages. To hold otherwise would deprive the Hospital defendants of their right to seek contribution from the Anesthesiology defendants, even though the Hospital defendants are found to be sixty percent or more responsible for the total damages. Again, the Hospital defendants should not be prejudiced by the failure of plaintiff to file the required Affidavit of Merit. Moreover, to hold otherwise would not only make the Anesthesiology defendants potentially responsible for damages notwithstanding the dismissal of the case against them with prejudice, but would also require them to participate in the trial. We believe the Affidavit of Merit Act was intended not only to insulate a licensed professional from the possibility of responding in damages unless an Affidavit of Merit is timely filed, but also to insulate them from the expense and inconvenience of litigation.
We recognize that this conclusion may result in harsh consequences to the plaintiff. However, the Affidavit of Merit Act involves the potential, on occasion, for unfortunate consequences. Nevertheless, the Legislature has provided for a dismissal of the claim with prejudice in the event of a failure to comply with the act. We believe the conclusions we have reached further that goal, notwithstanding the potential effect upon plaintiff in this case.
Our goal in construing a statute is to determine the intent of the Legislature. Medical Soc. v. Dept. of Law and Public Safety, 120 N.J. 18, 26, 575 A.2d 1348 (1990); N.J.E.A. v. Bd. of Trustees, PERS, 327 N.J.Super. 326, 333, 743 A.2d 353 (App.Div.2000). The primary goal in interpreting a statute is to determine the Legislature's intent. James v. Bd. of Trustees of PERS, 164 N.J. 396, 404, 753 A.2d 1061 (2000); Higgins v. Pascack Valley Hosp., 158 N.J. 404, 418, 730 A.2d 327 (1999). We must strive to effectuate the legislative intent, considering the language used, as well as the objectives sought to be achieved. Jacobitti v. Jacobitti, 135 N.J. 571, 580, 641 A.2d 535 (1994). As we have recently observed, "the wisdom, prudence and good sense of the Legislature in the enactment of law are not questions for the judiciary to resolve." Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J.Super. 52, 57, 766 A.2d 312 (App.Div.2001) (internal citations omitted).
*691 In addition, as previously noted, when one or more statutes relate to the same or similar subject matter, we must attempt to reconcile them and interpret them harmoniously. Oches v. Township of Middletown Police Dept., 155 N.J. 1, 5, 713 A.2d 993 (1998); In re Failure by Dept. of Banking, 336 N.J.Super. 253, 266, 764 A.2d 494 (App.Div.2001); Jackson Tp. Bd. of Educ. v. Jackson Educ. Ass'n, 334 N.J.Super. 162, 171, 757 A.2d 311, certif. denied, 165 N.J. 678, 762 A.2d 659 (2000).
Our decision harmonizes the legislative intent. The effect of our decision is that the only remaining defendants, the Hospital defendants, will be required to respond to damages in accordance with the percentage of liability allocated to it by the jury. That is consistent with the purposes of the Joint Tortfeasors Contribution Act and the Comparative Negligence Act. We recognize that we have denied plaintiff the ability to recover all her damages from the Hospital defendants if the jury found them to be sixty percent or more responsible for plaintiff's damages. However, to hold otherwise, would deny the Hospital defendants their right of contribution from the Anesthesiology defendants in the event the Hospital defendants were required to pay more than the percentage share allocated to them by the jury. As previously noted, if the Anesthesiology defendants were required to respond in damages, either to the plaintiff, or to the Hospital defendants by way of contribution, the purposes of the Affidavit of Merit Act would be frustrated. While we acknowledge that one of the purposes in enacting the Affidavit of Merit Act was to eliminate groundless malpractice filings, the practical effect of the Act is to deny a plaintiff the right to sue in those instances where there is non-compliance with the Act. Today's result is consistent with that purpose.
Pursuant to R. 2:6-11(d), plaintiff has brought to our attention the recent Supreme Court decision in Burns v. Belafsky, 166 N.J. 466, 766 A.2d 1095 (2001), suggesting we "may wish to reconsider the entire interlocutory dismissal order filed in favor of the Anesthesia Associates." In essence, plaintiff contends that, as in Burns, she filed a motion within the sixty-day extension period seeking to extend the time for service of an Affidavit of Merit, and included with her motion, two Affidavits of Merit. In addition, she asserts that she also had in her possession at the time the motion was filed an expert report of Dr. Andrew Liebowitz, a Board Certified Anesthesiologist.
Preliminarily, we note that it is inappropriate to bring to our attention, by letter, a new opinion and ask that we reconsider a prior order. Rather, a motion should have been made for reconsideration pursuant to R. 2:11-6(a), which may have prompted us to seek a response pursuant to that rule. Here, the issue has not been briefed and we elect not to consider it in light of the fact that the record does not provide adequate basis for disposition. Indeed, we have previously held that "review of interlocutory orders by the court prior to the final judgment ... [i]s a matter committed to the sound discretion of the court." Johnson v. Cyklop Strapping Corp., 220 N.J.Super. 250, 263, 531 A.2d 1078 (App.Div.1987), certif. denied, 110 N.J. 196, 540 A.2d 189 (1988). That discretion should only be exercised "for good cause shown and in the service of the ultimate goal of substantial justice." Id. at 263-64, 531 A.2d 1078. Accordingly, our denial of reconsideration on procedural grounds is not intended to preclude the trial court from considering a motion for reconsideration, if one is made, notwithstanding the fact that we have previously ruled upon the issue. Our prior opinion was interlocutory, and does not necessarily bar an application for reconsideration.
*692 The present record on appeal does not contain the pleadings submitted to the motion judge when the initial motions were made. Thus, we believe a motion for reconsideration of the initial order that resulted in the prior interlocutory appeal should first be addressed to the Law Division. The Law Division judge will not be reconsidering our prior opinion. Rather, if a motion is made the Law Division judge will be asked to reconsider his own prior order.
In light of our conclusion that the judge incorrectly barred the Hospital defendants from offering evidence regarding any negligence of the Anesthesiology defendants, we also reverse the order barring the Hospital defendants from referring to the Anesthesiology defendants as former defendants. Initially, we note that the order was premature and should have been decided in the context of a trial, where the judge would have had a feel for the case and been in a better position to determine its relevancy. We leave to the discretion of the trial judge the manner in which the Anesthesiology defendants should be referred.
Reversed and remanded for further proceedings not inconsistent with this opinion.[3]
NOTES
[1] We assume this to mean systolic blood pressure.
[2] We express no opinion as to whether a defendant who seeks to implead a new defendant by way of third-party complaint pursuant to R. 4:8-1(a), must file an Affidavit of Merit.
[3] Shortly prior to oral argument, plaintiff moved to strike portions of the Hospital defendants appendix based upon her contention that the challenged portions were not part of the record submitted to the motion judge. In response, the Hospital defendants concede that the hospital records and portions of the depositions of Nurse Woodhull and Nurse Shaw were not presented to the motion judge. However, they contend that those items substantiate what has been submitted, and support the same arguments that were made before the motion judge. Ordinarily, on appeal, we generally confine ourselves to the record. State v. Harvey, 151 N.J. 117, 201-02, 699 A.2d 596 (1997). Accordingly, we grant plaintiff's motion to strike pages forty through sixty-two of the Hospital defendants' appendix. However, we note that this decision does not affect our determination that the motion judge erred in precluding the Hospital defendants from attempting to assert the negligence of the Anesthesiology defendants by competent, relevant and admissible evidence.